HASTORF v. LEONHARD MICHEL BREWING CO.

(District Court, E. D. New York. February 6, 1918.)

1. WHARVES ⬦⟹20(3)—ACTION FOR NEGLIGENCE—DEFENSES.

Where the known condition of a berth was such as might be expected to produce injury to a boat, it is no defense to a suit for such an injury, that other boats had loaded there without injury.

2. WHARVES ⬦⟹20(7)—INJURY TO VESSEL—LIABILITY FOR NEGLIGENT CONDITION OF DOCK.

A corporation, owner of a dumping board, which it rented, *held*, under the evidence, to have had no interest in its operation which rendered it liable for an injury to a scow from the negligent condition of the loading berth.

In Admiralty. Suit by Albert Hastorf against the Leonhard Michel Brewing Company. Decree for respondent.

Foley & Martin, of New York City, for libelant.

Macklin, Brown & Purdy, all of New York City, for respondent.

CHATFIELD, District Judge. Action for damages caused by the sinking of the dumper Adelphia in front of a dumping board at Bond and Third streets, in the Gowanus Canal, on or about the 5th day of September, 1914. The testimony shows that the injuries to the vessel were caused by stranding when partially loaded, and the liability for said injuries would fall upon the party subjecting the boat to the improper strains caused by loading in such position. There is nothing to indicate failure on the part of the persons handling the boat, either in the way of improper maintenance of lines or negligence in breasting the boat off, and the issue of the case comes down to the question of responsibility for failure to dredge the berth before its use in the manner in question. It appears that the barge had been chartered on the 23d of July, and that at various times in August boats had gone aground at this dump; but apparently the condition of the bottom became worse, and, if it did not, the circumstances upon the 3d, 4th, and 5th of September, when the Adelphia was being loaded, so combined as to inflict injury which may have accidentally been avoided upon previous trips to the dump.

[1] The first question to be considered is whether or not negligence is shown by such condition of a berth as to cause that injury which might reasonably be expected, even though a number of vessels had previously undergone the risk and escaped without danger. It has been held in many cases, where public and common use of a sidewalk or street, without injury to the passer-by, is admitted, that the evidence of the situation and such public use might throw some light upon the question of negligence in leaving the place in such condition that accident would not ordinarily be expected, but from which it did in fact occur. But in the present case we have an injury occurring from what might reasonably have been expected to produce injury, and evidence that it did not previously happen does not present any defense.

[2] The real question in the case is as to the responsibility of the

respondent for the conditions shown. It appears that the Michel Brewing Company is a corporation, which under its charter has certain powers, including the owning and running of a brewery, distillery, or refrigerating plant, the construction and use of wharves or docks in connection therewith, the purchase of interests in other property, and the holding of property anywhere in the United States, and the usual powers in relation to the transaction of necessary business in connection with the trade operations just specified. It owns the property at which this dumping board is located, and previously rented the same to a contracting firm for the removal of ashes and such materials. It was admittedly within the scope of respondent's charter to use the dumping board as a dock or berth for any scow that might be bringing or taking away material from the brewery, or in connection with the business of the brewery itself; but it did not have authority to conduct a public dump.

The respondent pleads freedom from liability for the condition of the berth and for the maintenance of the same when in the possession of a tenant, and in order to establish the existence of such a tenant has introduced evidence to show an agreement during the summer of 1914 with certain individuals doing business under the name of the Bond Development Company. It further appeared in the testimony that this Bond Development Company was the name under which the individuals concerned expected to be incorporated; but no such corporation was actually formed, and no certificate of doing business under this name was filed.

One of the serious issues of fact in the case is with respect to the relations of the parties who were doing business under the name of the Bond Development Company. It is admitted that Joseph Donnelly and D. Guernsey Odell were associated in the enterprise, and that one Thomas B. Rogers acted as general manager and was interested in the business, although he appears from the testimony not to have been in a position to put in money in forming the corporation. He in fact was the practical man, and the individual who seems to have interested the others in undertaking this business, which had been surrendered by a corporation previously removing materials from the dump. As has been said, the corporation was never formed. Rogers' management did not bring in immediate profits, and possession of the dump was surrendered, and operations ceased on the day on which the Adelphia sank in the berth in front of the dump.

The Michel Brewing Company is brought into the matter through transactions with John Michel, the son of Leonhard Michel, the president of the company. John Michel was also secretary and treasurer of the brewery and a director in the same. While the Bond Development Company was going into operation, the C. F. Harms Company, which in turn chartered boats from Hastorf and other owners as occasion required, exacted from the Michel Brewing Company a guaranty for payment of charges against the Bond Development Company for dumpers to be used at the dumping board in question.

It appears that neither the Michel Brewing Company nor the C. F. Harms Company knew that the Bond Development Company had

no actual existence, and both parties, as well as the libelant, Hastorf, treated the Bond Development Company as a corporation or an actually existing partnership. There is no dispute that the brewing company, at the instance of John Michel, as manager of the brewing company, guaranteed payment to the Harms Company of all charges for dumpers, "for our account, to be used in connection with the Bond Development Company or its successors, at Bond and Third street board, Brooklyn, N. Y."

The charge is made, by the Harms Company and by the libelant, that the brewing company was planning to operate this dump through a subsidiary corporation, because of the lack of power in the brewing company to conduct a dumping board business under its charter, and that John Michel so stated the situation to the Harms Company.

The libelant also offered the testimony of John Donnelly, one of the two men admittedly operating under the name of the Bond Development Company, to show that, not only had the Bond Development Company advanced no further than the form of voluntary oral partnership, but also that John Michel, as an individual, was a full partner in the transaction. From this testimony it would appear that John Michel might have been anticipating personal benefit as a partner in the dumping business, in addition to his interest in the brewery, and that he might have had some motive in seeking a personal share in its profits, if the brewery was unable of itself to manage or conduct the dump, and if from that fact the only return to the brewery as such would be rental of the property. John Michel strenuously denies this claim of partnership, and its determination is probably immaterial to the question of responsibility for the injuries received by the Adelphia.

The admitted facts are that the individuals who were doing business under the name of the Bond Development Company rented from the brewing company the right to use the slip in question for the purposes of a dumping board. Whether the individuals comprising the Bond Development Company could be fined for evasion of the law requiring registration of that name with the county clerk of Kings county, or whether John Michel is responsible as one of the partners in the firm called the Bond Development Company, is immaterial; for there is no evidence in the case that the brewing company, or John Michel, as manager, was to receive from the operations of the Bond Development Company more profit than the rent of the dumping board. Even if John Michel as an individual was to get this profit, it seems to have been concealed from the brewing company, and the guaranty by the brewing company of the charges for towing, wharfage, and labor on all scows used for account of the brewing company would not cover responsibility for the manner of loading by any corporation or firm which might rent the dump from the brewery.

Counsel in their briefs have devoted much argument to a discussion of liability of the brewing company for the accident in question, from the standpoint of ultra vires. While it must be held that the brewing company would still be liable for a tort, the evidence does not show that the brewing company was acting as principal, through an agent;

but, on the contrary, it appears that the brewing company was the landlord, and that its tenants were individuals, whose motives and acts have involved the landlord in an apparent sharing in what actually and legally was not such responsibility as would make the respondent (the landlord) liable for the injuries sustained.

The libel must be dismissed.